No. 51,997

COUNTRY CLUB HOME, INC., and LAWRENCE SOWERS as ADMINISTRA-
TOR, *Appellee*, v. ROBERT C. HARDER, as SECRETARY OF SOCIAL AND
REHABILITATION SERVICES, *Appellant.*

(623 P.2d 505)

Opinion filed January 17, 1981,

see *Country Club Home, Inc. v. Harder,* 228 Kan. 756, 620 P.2d 1140
[1980].)

*Bruce A. Roby,* for State Department of Social and Rehabilitation Services,
argued the cause and was on the briefs for the appellant.

*T. Richard Liebert,* P.A., of Liebert & Liebert, of Coffeyville, argued the cause
and was on the brief for the appellee.

*Robert A. Coldsnow* argued the cause and was on the *amicus curiae* brief for the
Kansas Legislative Coordinating Council.

The opinion of the court was delivered by

FROMME, J.: All parties to this appeal, including *amicus curiae,*
have filed motions for modification. Plaintiff-appellee requests
this court to affirm the judgment of the trial court. Defendant-ap-
pellant and *amicus curiae* urge modification and clarification of
the original opinion. After considering these motions we find a
change in the effective date of K.A.R. 30-10-12 from May 1, 1978,
as it appears in the original opinion, to December 30, 1977 is
necessary. This is the regulation which first omitted the limitation
placed on payments to be made to nursing homes to funds which
were made available or appropriated by the legislature. In order
to understand why this change of date is necessary certain facts
must be disclosed.

The Kansas statutes authorizing agencies to adopt rules and
regulations recognize two kinds of regulations, temporary regu-
lations (K.S.A. 77-422) and permanent regulations (K.S.A. 77-
426). Under K.S.A. 77-422:

"A temporary rule and regulation shall take effect, subject to subsequent action
or enactment by the legislature, after approval by the secretary of administration
and the attorney general, as provided by K.S.A. 77-420, and amendments thereto,
upon filing with the revisor of statutes or upon a later date specified in the rule and
regulation. A temporary rule and regulation filed after October 1, 1976, and on or
before December 31, 1977, shall not be effective after April 30, 1978. . . ."

Under K.S.A. 77-426 a new permanent regulation when filed with the revisor of statutes on or before December 31 of any year "shall become effective on and after May 1 of the succeeding year." No rules and regulations may be filed "after December 31 or prior to May 1 in any year, except temporary rules and regulations."

The agency in this case filed a new permanent regulation K.A.R. 30-10-12 on December 29, 1977. This was before the December 31st deadline and under K.S.A. 77-426 it did not become effective until May 1, 1978. However, the agency also filed a temporary regulation, identical in substance, on December 30, 1977. Under the provisions of K.S.A. 77-422, above quoted, this regulation became effective when filed with the revisor of statutes December 30, 1977, and remained in effect until May 1, 1978, when the permanent regulation became effective. The provisions of K.S.A. 77-426, which fixes May 1 of the year succeeding the filing of the regulation as the effective date of a permanent regulation, specifically excepts from the operation of the statute temporary regulations. Thus, K.A.R. 30-10-12 first became effective as a temporary regulation on December 30, 1977, after approval by the attorney general and the department of administration, and at the time it was filed with the revisor of statutes. It remained in effect until the permanent regulation became effective May 1, 1978.

Therefore, the objectionable features of the agency's prior regulations concerning nursing homes, which limited the amount of payments to those funds which might be available and appropriated by the legislature, were removed by the adoption of the temporary regulation effective December 30, 1977, instead of May 1, 1978, as stated in the original opinion. Accordingly, it is held that the date May 1, 1978, in syllabus ¶ 8, should be and is hereby changed to December 30, 1977, and a similar correction of date from May 1, 1978, to December 30, 1977, is ordered throughout the body of the original opinion, including the last two paragraphs.

In addition to the above corrections, two matters of clarification appear necessary after considering the motions for modification filed by *amicus curiae* and defendant-appellant. The first relates to regulations for the period from July 1, 1971, to July 28, 1972, and to the basis upon which it was held the administrative

action taken by the agency was without proper legal authority. During this period of time the agency adopted and had in effect three different regulations affecting payments for care in nursing homes. The first, K.A.R. 30-5-27, was filed October 1, 1970, and became effective January 1, 1971. It specified that the payments be made for *reasonable, usual and customary charges.* The second was a temporary regulation effective October 1, 1971, which called for payment of *reasonable charges.* The third was a permanent regulation filed October 1, 1971, which became effective January 1, 1972, and called for payment of *reasonable charges.*

In addition, these three different regulations each provided that payment levels for care should be based on the nursing homes' "cost plus a reasonable profit," and payments were to be determined by cost and other data submitted by the nursing homes. The federal requirements under the Social Security Act, both before and after July 1, 1976, talked of payments to be fixed with some reference to costs of the services furnished by the nursing homes. Prior to July 1, 1976, the federal Department of HEW had provided that payment rates not exceed rates determined using medicare principles of reimbursement for Title XVIII services. 45 C.F.R. 250.30(b)(3)(ii) and (iii) (1971-72-73). In setting Title XIX payments to providers, the rates were to be the lesser of reasonable *cost* or customary charges, which was the basis for reimbursement for Title XVIII services. Both federal and state regulations during the period spoke of "costs" as a basis for arriving at either reasonable charges or reasonable, usual and customary charges.

In the original opinion and here we see no conflict or invalidity by reason of the wording of the state and federal statutes or regulations for the period from July 1, 1971, to July 28, 1972. The Department of Social and Rehabilitation Services of the State of Kansas simply failed to comply with the existing federal and state regulations. The agency provided no schedule for reimbursements based on or tied to the cost of nursing home services furnished to Title XIX patients. We continue to hold the failure of the state agency to implement the state and federal requirements by administrative action, so as to provide some reasonable cost-related method to determine reasonable rates for reimbursement of nursing homes during this period rendered the regulations and the administrative action taken to be without legal authority.

During this period the statutes in effect required payment of *reasonable charges.* Statements as to reasonable, usual and customary charges to the contrary in the original opinion should be disregarded.

The second matter of clarification concerns references in the original opinion to Social Security Act § 1902(a)(13)(E) and 42 U.S.C.A. § 1396a(a)(13)(E). It has been pointed out that paragraphs (13)(E) were limited provisions of the acts which did not become effective until July 1, 1976. However, the other provisions of this act and its predecessor were in effect during the period in question, July 28, 1972, to December 30, 1977. Such references to the Social Security Act in the opinion should be generalized to read Social Security Act § 1902 and 42 U.S.C.A. § 1396a *et seq.* The more specific references are not necessary to support the decision. The invalidity of the state regulations for this period arose by reason of the provision in the state regulations which limited the amount of nursing home payments under Title XIX to amounts which might be appropriated and made available under state law. The invalidity was not by reason of any specific conflicting provision in the federal Social Security Act.

Accordingly, we decline to grant a rehearing; the original opinion of the court is clarified and modified as set forth herein. We adhere to the original opinion except as herein modified.