No. 56,096

IN THE MATTER OF THE APPEAL OF J. G. MASONRY, INC., FROM AN ORDER OF THE BOARD OF TAX APPEALS, STATE OF KANSAS, J. G. MASONRY, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE OF THE STATE OF KANSAS, *Appellee.*

(680 P.2d 291)

498

Opinion
filed April 27, 1984.

*Craig Towerman,* of Ryder, Rose, Frensley & Shapiro, of Kansas City, Missouri, argued the cause, and *David R. Frensley,* of the same firm, and *Scott E. Giffen,* of Long & Giffen, of Mission, were with him on the briefs for appellant.

*Cleo G. Murphy,* of the Kansas Department of Revenue, argued the cause, and *William L. Edds,* general counsel, and *Nancy E. Freund,* of the Kansas Department of Revenue, were with her on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is a taxpayer's appeal from a judgment of the Wyandotte District Court affirming an order of the Board of Tax Appeals which upheld an assessment of sales and compensating taxes by the Kansas Department of Revenue. J. G. Masonry, Inc., a masonry construction firm of Kansas City, Kansas, is the taxpayer and appellant. Following an audit of the taxpayer's records in 1980, the Department assessed additional unpaid taxes on several services and business transactions occurring in the years 1977, 1978 and 1979. Total taxes, interest and penalties amounted to $2,912. Five questions are presented, two regarding the sales tax, K.S.A. 79-3601 *et seq.,* and the then-current amendments, and three regarding the compensating tax, K.S.A. 79-3701 *et seq.,* as then constituted. Each issue is based upon different facts, so we will discuss separately the facts applicable to each.

## I. THE "ORIGINAL CONSTRUCTION" AND "BUILDING" EXEMPTIONS IN K.S.A. 1978 Supp. 79-3603

The taxpayer first contends that two of its construction projects upon which sales taxes were levied come within the "original construction" exemption of the statute and thus should not have been taxed. The pertinent portions of the statute read:

"79-3603. **Tax imposed; rate.** From and after the effective date of this act, for the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the services taxable under this act, there is hereby levied and there shall be collected and paid a tax as follows:

. . . .

"(*p*) a tax at the rate of three percent (3%) upon the gross receipts received for the service of installing or applying tangible personal property which when installed or applied is not being held for sale in the regular course of business, and whether or not such tangible personal property when installed or applied remains tangible personal property or becomes a part of real estate, except that no tax shall be imposed upon the service of installing or applying tangible personal property in connection with the original construction of a building or facility or the construction, reconstruction, restoration, replacement or repair of a bridge or

highway. The tax imposed pursuant to this subsection shall not be applicable to said services which were rendered on and after the effective date of this act pursuant to a written contract for a fixed price and not subject to negotiation or alteration entered into prior to May 15, 1977.

"For the purposes of this subsection:

"(1) 'Original construction' shall mean the first or initial construction of a new building or facility. The term 'original construction' shall include the addition of an entire room or floor to any existing building or facility, the completion of any unfinished portion of any existing building or facility and the restoration, reconstruction or replacement of a building or facility damaged or destroyed by fire, flood, windstorm, hailstorm, rainstorm, snowstorm, lightning, explosion or earthquake, but said term shall not include replacement, remodeling, restoration, renovation or reconstruction under any other circumstances;

"(2) 'Building' shall mean only those enclosures within which individuals customarily live or are employed, or which are customarily used to house machinery, equipment or other property, and including the land improvements immediately surrounding such building  . . . ."

In April or early May 1979, J. G. Masonry, Inc. (J. G.), built an office at the Perk Foods plant. The office is described as having four freestanding walls and a roof. It is wholly within the plant building and is "a building within a building." Similarly, in June 1979, J. G. built an office inside the Midwest Conveyor plant. Again, it consists of four freestanding walls and a roof. It is "a building inside a building." Taxpayer contends that these rooms were "original construction," as that term is used in 79-3603(p)(1), because each is "the addition of an entire room . . . to [an] existing building  . . . ." J. G. argues that it added a new room to each plant. The State claims that the statute exempts only rooms added to the *exterior* of buildings, and in support of its argument it cites K.A.R. 1983 Supp. 92-19-31. That regulation as originally adopted by the secretary of revenue was submitted to the 1979 session of the Kansas Legislature and was modified by Senate Concurrent Resolution No. 1627. The modified regulation, set forth in 1979 Session Laws, chapter 349, reads in part as follows:

"92-19-31. *Installation or application of tangible personal property*. (a) *General rule*. Kansas sales tax must be collected by the retailer on total gross receipts received for the service of installing or applying tangible personal property. A retailer of the service of installing or applying tangible personal property is *the* person who *performs such service*.

"(b) *Original construction*. No tax is imposed upon the service of installing or applying tangible personal property in connection with the original construction of a building or facility. (1) The addition of a room or floor inside an existing building is not considered to be original construction. The addition of an entire

room or floor to the exterior of an existing building or facility is considered to be original construction." (Emphasis in original.)

The administrative regulation makes it clear that a building inside a building or a room within a room is not original construction. Administrative regulations, when adopted, have the force and effect of statutes. *Jones v. The Grain Club*, 227 Kan. 148, Syl. ¶ 1, 605 P.2d 142 (1980); *Harder v. Kansas Comm'n on Civil Rights*, 225 Kan. 556, Syl. ¶ 1, 592 P.2d 456 (1979). This resolution became effective on May 1, 1979, and thus was in full force at the time of the Midwest Conveyor construction. Whether it is applicable to the Perk Foods job depends upon the time that work was done, and the record shows only that the work was done in "April or early May."

Nevertheless, this issue may be decided on the basis of K.S.A. 1978 Supp. 79-3603(*p*)(1) alone, without resort to the regulation. That portion of 79-3603(*p*)(1) here applicable speaks of "the *addition*" of a room. "Addition" is defined in Webster's Third New International Dictionary (1964) as "a part added to or joined with a building to increase available space." To add is to enlarge. Neither the Perk Foods nor the Midwest Conveyor projects resulted in any increased available space in either plant; rather, the available space inside the plant was subdivided in order to make it usable for a particular purpose. The original structure was not enlarged. The interior of the plant was merely remodeled.

The sales tax statutes are penal, and thus must be strictly construed in favor of the taxpayer. *State v. Zimmerman & Schmidt*, 233 Kan. 151, 155, 660 P.2d 960 (1983). The rule of strict construction, however, does not permit a disregard of manifest legislative intention appearing from plain and unambiguous language. *State v. Howard*, 221 Kan. 51, 54, 557 P.2d 1280 (1976). The legislative language speaks of "the addition of an entire room." The plain and ordinary meaning of that language is not the dividing of one room into two or more rooms; it connotes an addition to the building. We conclude that the statute does not exempt from the sales tax the construction of a building within a building or a room within a room. The Board of Tax Appeals and the district court did not err in finding the construction at the Perk Foods and Midwest Conveyor plants subject to the Kansas sales tax.

In August 1978, J. G. erected masonry walls to screen and surround a trash and debris area outside of and adjacent to the existing Midwest Conveyor plant. J. G. contends that this project is exempted from sales tax by the last portion of K.S.A. 1978 Supp. 79-3603($p$)(2), which exempts "land improvements immediately surrounding such building."

The first portion of 79-3603($p$) imposes a sales tax; later, the same section exempts "the original construction of a building." Subsection (1) defines original construction as "the first or initial construction of a new building," and, as noted above, subsection (2) defines "building" to include the land improvements immediately surrounding the building. Read together and taken in context, these provisions of the act exempt new buildings from the imposition of sales tax. Included within the initial exemption are all exterior improvements—steps, sidewalks, retaining walls, landscaping, and parking lots, for example—which are built or installed in connection with the original construction. The taxpayer urges a construction of the statute that would exempt any exterior improvements added to the property at a later date, long after the completion of the original building. This, it seems to us, is a strained construction, not within the legislative intent as expressed in the clear terms of the statute. The walls erected in the trash area, built as a separate project and not as a part of the original building construction, were not exempt from sales tax.

Four other jobs performed by J. G. were also assessed with sales tax by the Kansas Department of Revenue. In February 1978, J. G. rebuilt a wall which had been damaged by a truck at the Perk Foods plant. In April 1978, J. G. rebuilt a wall which had been damaged by a vehicle at Keils liquor store. In April 1979, J. G. cut a hole in a masonry wall and built an opening to receive an overhead door at the Perk Foods plant. Finally, in July 1979, J. G. repaired and enlarged a retaining wall after a truck had collided with the prior wall at the Perk Foods plant. Appellant does not argue against these four assessments in its brief and we find no provisions of the statute which would exempt these projects from the imposition of the sales tax. The walls in question were not damaged or destroyed by "fire, flood, windstorm, hailstorm, rainstorm, snowstorm, lightning, explosion or earthquake," and thus the reconstruction of these four walls was properly subjected to the tax.

## II.  THE VAGUENESS ISSUE

Appellant contends that K.S.A. 1978 Supp. 79-3603(*p*) is unconstitutionally vague. The legal standards for determining whether a statute is unconstitutionally vague and indefinite were stated by Justice (now Chief Justice) Schroeder in *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 562 P.2d 65, *modified* 221 Kan. 752, 564 P.2d 1280 (1977). The issue in that case was whether K.S.A. 1974 Supp. 79-3603(*p*), the predecessor of the provision now at issue, was constitutional. The section was declared unconstitutionally vague. The rules leading to this declaration were stated as follows:

"[T]he basic test as to what constitutes an unconstitutionally vague and indefinite statute is stated in *Connally v. General Const. Co.*, 269 U.S. 385, 70 L.Ed. 322, 46 S.Ct. 126 [1925]. There the current rate of wages in the locality was to be paid to persons employed by or on behalf of the State of Oklahoma. In holding the words 'current rate of wages' and 'locality' were vague, the United States Supreme Court enunciated the rules to be applied. The court said:

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. . . .' (p. 391.) [Citations omitted.]

"Since the Kansas Retailers' Sales Tax Act provides for monetary fines or imprisonment, or both, for violating the provisions of the act, the rule in *Connally* must be applied.

"The court in *Connally* goes on to point out that statutes which employ terms that have a technical meaning understood by those who are to be affected by the statute, or employ terms that have a well settled meaning at common law, are generally upheld when attacked for being vague or indefinite. The appellant concedes the words used in 79-3603(*p*) are not technical in nature.

"Our Kansas cases have employed virtually the same test as originally stated in *Connally*, only adding that if the words used in a statute have been previously judicially construed, the statute will not be considered vague. In *Unified School District No. 255 v. Unified School District No. 254*, 204 Kan. 282, 463 P.2d 499 [(1969)] the court held:

" 'A statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or having a settled meaning in law.' (p. 288.)

"At its heart the test for vagueness is a commonsense determination of fundamental fairness.

"There are three terms used in 79-3603(*p*), *supra*, which cause particular concern to those liable for the collection of the tax. The first term is 'tangible

personal property'; the second term is 'original construction'; and the third term is 'structure.' " 221 Kan. at 662-63.

The court went on to discuss the three terms and found their then-undefined use in the statute to be vague and their meaning uncertain. Bolstered by some 500 opinions—some conflicting—written by the legal division of the revenue department and interpreting the act, the court held the statute unconstitutional. These constitutional defects have since been remedied by the legislature. See L. 1977, ch. 337, § 2.

Additional rules for determining whether a statute is unconstitutionally vague are collected in *State v. Lackey*, 232 Kan. 478, 479-80, 657 P.2d 40 (1983).

K.S.A. 1978 Supp. 79-3603(*p*), like its predecessor considered in *Kansas City Millwright*, uses words which are not technical in nature. There is no evidence that the statute has been the subject of myriad departmental rulings as was its predecessor. "Original construction," "building" and "structure" have been statutorily defined, and the legislatively approved regulation, quoted above, aids in explaining the statute. Though one witness for the taxpayer complained of problems generally in interpreting the statute, another witness obviously had not read the statute and was unfamiliar with the fire, flood, windstorm and other natural calamity exceptions which are carefully spelled out in the act. We have discussed above the taxpayer's contentions as to the application of the statute to the rooms and the walled-in trash area, and find the statute sufficiently clear and understandable, when considered in its entirety. We conclude that the statute now before us is not vague and indefinite, and not constitutionally infirm.

### III. THE "FREIGHT CHARGE" ISSUE

J. G. next contends that the tax imposed by K.S.A. 79-3701 *et seq.*, the compensating or use tax, is unconstitutional because the tax must be paid not only on the sale price of the item purchased but also upon the freight charges from the place of purchase to the person using the property in this state. It claims that this discriminates against out-of-state sellers since in-state sellers may absorb the cost of transportation to the point of sale and charge sales tax only on the freight charges from seller to buyer. Thus, the taxpayer contends that the act conflicts with the commerce clause, article I, section 8, of the Constitution of the

United States, by placing an impermissible burden on interstate commerce.

Let us examine the statutes and regulations. K.S.A. 79-3703 imposes a tax of 3% upon the consideration paid by the taxpayer. K.S.A. 79-3702(*a*) defines "purchase price" as the consideration paid plus the actual cost of transportation from the place where the article was purchased to the person using the same in this state.

The applicable regulations have been in effect since January 1, 1972. K.A.R. 92-20-1 explains the purposes of the Kansas Compensating Tax Act. It reads:

"92-20-1. **Purposes.** The Kansas compensating (use) tax act, as amended, supplements the Kansas retailers' sales tax act by imposing a like tax for the privilege of using, storing, or consuming within this state tangible personal property purchased at retail or for the privilege of utilizing taxable services within this state and in respect to which property or taxable services neither sales tax nor use tax of three percent (3%) or more has been imposed by this state or any other state."

K.A.R. 92-20-4 deals with the imposition of the tax on transportation costs. It provides in applicable part:

"92-20-4. **Purchase price, consideration, trade-ins.** The actual cost of transportation from the place where the article was purchased to the person using the same in this state is taxable as a part of the consideration and purchase price. Transportation costs mean freight, express, parcel post, or other hauling charges. It shall include charges for crating, packing and preparing tangible personal property for shipment."

Similarly, K.S.A. 1978 Supp. 79-3603 imposes a 3% sales tax upon the gross receipts received from the sale of tangible personal property within this state, and K.S.A. 1978 Supp. 79-3602(*g*) defines "selling price" as "the total cost to the consumer . . . including freight and transportation charges from retailer to consumer." Section 3602(*h*) defined "gross receipts" as "the total selling price." Thus, both the compensating tax and the sales tax are computed as 3% of the total sale price plus the freight charges from seller to buyer.

Neither tax is imposed upon the shipping charges from manufacturer, wholesaler or distributor to the seller. Such charges form a part of the seller's cost and are reflected in the sale price. But shipping charges incurred after the sale and arising upon shipment from seller to buyer are alike subject to the same rate of tax. This is true whether the purchase is made in-state or out,

whether near or far from the buyer's designated point of delivery.

The taxpayer relies primarily upon two cases, *Halliburton Oil Well Co. v. Reily*, 373 U.S. 64, 10 L.Ed.2d 202, 83 S.Ct. 1201 (1963), and *Chicago Bridge & Iron Company v. Cocreham*, 317 So. 2d 605 (La. 1975), *cert. denied* 424 U.S. 953 (1976). We find both cases distinguishable on the facts. *Halliburton* struck down a Louisiana use tax as discriminating against interstate commerce. Louisiana applied its use tax to the cost of labor and shop overhead in the assembly of machinery that was put together in another state and then brought into Louisiana, but its sales tax did not apply to the cost of labor and shop overhead in the assembly of machinery put together within the state. Similarly, its use tax applied to isolated sales of equipment bought out of state and brought in, but its sales tax did not apply to isolated sales within the state. The court said:

"The conclusion is inescapable: equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." 373 U.S. at 70.

*Chicago Bridge and Iron* followed the *Halliburton* rationale. A Louisiana use tax on freight charges applied to out-of-state purchases, and the Louisiana sales tax did not apply to freight charges on in-state sales. The use tax act was discriminatory, and was held unconstitutional.

In the recent case of *Maryland v. Louisiana*, 451 U.S. 725, 68 L.Ed.2d 576, 101 S.Ct. 2114 (1981), the Supreme Court in an original action struck down a Louisiana "First-Use Tax" imposed on certain uses of natural gas brought into that state principally from offshore gas wells in the Outer Continental Shelf (OCS). The tax was so structured that its imposition fell not on consumers within the state, but only on the ultimate consumers of the gas *outside* of Louisiana. Holding that the tax was discriminatory and thus unconstitutional under the commerce clause, the court said:

"In our view, the First-Use Tax cannot be justified as a compensatory tax. The concept of a compensatory tax first requires identification of the burden for which the State is attempting to compensate. Here, Louisiana claims that the First-Use Tax compensates for the effect of the State's severance tax on local production of natural gas. To be sure, Louisiana has an interest in protecting its natural resources, and, like most States, has chosen to impose a severance tax on the privilege of severing resources from its soil. [Citations omitted.] But the First-Use Tax is not designed to meet these same ends since Louisiana has no

sovereign interest in being compensated for the severance of resources from the federally owned OCS land. The two events are not comparable in the same fashion as a use tax complements a sales tax. In that case, a State is attempting to impose a tax on a substantially equivalent event to assure uniform treatment of goods and materials to be consumed in the State. No such equality exists in this instance.

"The common thread running through the cases upholding compensatory taxes is the equality of treatment between local and interstate commerce. See *Boston Stock Exchange [v. State Tax Comm'n]*, 429 U.S. [318] at 331-332, [50 L.Ed.2d 514, 97 S.Ct. 599 (1977)]; *Henneford v. Silas Mason Co.*, 300 U.S. 577, 583-584 [81 L.Ed. 814, 57 S.Ct. 524] (1937). See generally *Halliburton Oil*, 373 U.S., at 70 ('equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state'). As already demonstrated, however, the pattern of credits and exemptions allowed under the Louisiana statute undeniably violates this principle of equality. As we have said, OCS gas may generally be consumed in Louisiana without the burden of the First-Use Tax. Its principal application is to gas moving out of the State. Of course, it does equalize the tax burdens on OCS gas leaving the State and Louisiana gas going into the interstate market. But this sort of equalization is not the kind of 'compensating' effect that our cases have recognized.

. . . .

"In conclusion, we hold that § 1303C violates the Supremacy Clause and that the First-Use Tax is unconstitutional under the Commerce Clause." 451 U.S. at 758-760.

In 1959, Justice (now Chief Justice) Schroeder authored a unanimous opinion for this court in the case of *Custom Built Homes Co. v. State Comm. of Rev. and Taxation*, 184 Kan. 31, 334 P.2d 808 (1959). The case involved G. S. 1949, 79-3701 *et seq.*, as then amended. These statutes are the forerunners of our present compensating tax act. G. S. 1949, 79-3702, as amended in 1957, defined "purchase price" exactly the way it is now defined by K.S.A. 79-3702—the consideration paid plus "the actual cost of transportation from the place where the article was purchased to the person using the same in this state." Interestingly, the Retailers' Sales Tax Act then applicable did not make the sales tax applicable to intrastate freight charges from seller to buyer. That statute was changed in 1971 to make the tax applicable to freight and transportation charges from retailer to consumer. See L. 1971, ch. 321, § 1. The language adopted in 1971 is retained in our present statute, K.S.A. 1983 Supp. 79-3602.

The issue of freight charges was not raised in *Custom Built Homes*, but the act was attacked as violating the interstate commerce clause. Citing *Henneford v. Silas Mason Co.*, 300 U.S. 577, 81 L.Ed. 814, 57 S.Ct. 524 (1937), and *Southern Pac. Co. v.*

*Gallagher,* 306 U.S. 167, 83 L.Ed. 586, 59 S.Ct. 389 (1939) (neither of which has since been reversed or overruled), the opinion states:

"The imposition of a 'use' tax by Kansas is not violative of the interstate commerce clause of the Federal constitution merely because the merchandise was transported to Kansas from the State of Minnesota. When merchandise transported in interstate commerce has arrived at its destination and is there held for use or disposal, it passes under the protection of state law and becomes subject to the taxing and police power of the state." *Custom Built Homes,* 184 Kan. at 45.

The history, scope and purpose of the Kansas sales tax and compensating tax acts have been set forth in several of our cases. See *United Parcel Service, Inc. v. Armold,* 218 Kan. 102, 104, 542 P.2d 694 (1975); *Custom Built Homes,* 184 Kan. at 41; *General Motors Corporation v. State Comm. of Rev. & Taxation,* 182 Kan. 237, 242-243, 320 P.2d 807, *cert. denied* 358 U.S. 875 (1958); *Consumers Co-operative Ass'n v. State Comm. of Rev. & Taxation,* 174 Kan. 461, 464-465, 256 P.2d 850 (1953); *Southwestern Bell Tel. Co. v. State Commission of Revenue and Taxation,* 168 Kan. 227, 230-231, 212 P.2d 363 (1949); *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* 163 Kan. 458, 463, 183 P.2d 234 (1947). In *General Motors,* Justice Price gave this summary:

"The sales tax law levies a tax of two per cent upon the privilege of selling tangible personal property at retail in this state, or rendering or furnishing certain services therein. Under that law the event which gives rise to the tax is the *sale* of tangible personal property at retail, or the rendering or furnishing certain services. The law is framed, and has been construed, so that the transaction which is taxed is that by which a commodity moves to the ultimate consumer, whoever he may be.

"With the enactment of the sales tax law another problem arose. Much property is purchased outside the state and brought into the state for various purposes. Kansas could not tax the privilege of selling property when the sale took place beyond its borders. In other words, the necessity for a 'use' tax arose from the fact that a state is without power to tax sales which are completed beyond its territorial limits. The result of this situation was the enactment of the so-called 'use tax' law, here involved. The two laws are, from a practical standpoint, complementary and supplemental to each other, and are to be construed to-gether. Under the 'use tax' law the taxable event giving rise to the imposition of the tax is not the sale but is the *use, storage or consumption* of property within the state which was acquired by purchase *outside* the state." (Emphasis in original.) 182 Kan. at 242-43.

Our sales and use taxes still complement each other, and still

serve the same purposes. The use or compensating tax equalizes the ultimate consumer cost, whether the consumer buys within or without the state. Delivery charges from seller to consumer are subject to the same rate of tax as a part of the cost of the item. Transportation costs between manufacturer, distributor and seller, whether in-state or out-of-state, are not separately taxed, but are reflected in the price which seller must charge buyer and therefore contribute to the retail selling price which *is* subject to tax. All tangible property sold, used or consumed in the state is subject to a uniform tax burden regardless of the location of the seller. The 1971 change in section 79-3602 of our sales tax statutes, noted above, serves to strengthen our conviction that our sales and compensating tax laws are constitutional. We adhere to our ruling in *Custom Built Homes* and hold that the Kansas Compensating Tax Act, K.S.A. 79-3701 *et seq.*, does not violate the commerce clause, article I, section 8, of the United States Constitution.

## IV. COMPENSATING TAX NOT "COLLECTED OR COLLECTIBLE"

In August 1978 and June 1979, J. G. ordered office supplies by telephone from a firm in Chicago, Illinois. The cost of the supplies totaled $160, and the tax thereon is about $4.80. The taxpayer complains about the imposition of compensating tax on those purchases, and relies upon the proviso contained in K.S.A. 79-3705a, which reads:

"If the tax levied under K.S.A. 79-3703 is not collected or collectible by the retailer, then the person using, consuming or storing tangible personal property in this state shall file a return and pay the tax, as required by K.S.A. 79-3706."

The taxpayer makes no claim that any Illinois sales tax was paid, that the out-of-state seller was the holder of a permit to collect Kansas compensating tax, pursuant to K.S.A. 79-3705d, or that the taxpayer has paid any compensating or sales tax on these purchases. Instead, taxpayer claims that the phrase "not collected or collectible" should be read "neither collected nor collectible," and that when so read, the court should hold that the Chicago company *could* have collected the tax and therefore the State cannot look to the purchaser-consumer for payment of the tax.

This is a strained construction of the act which we decline to follow. The word "collected" is clear, and there is no claim that

the tax was collected. The word "collectible," in the context of its use in the compensating tax statutes, indicates "capable of being collected" in the sense that the seller was authorized to collect the tax for the State of Kansas. There is no showing here that the seller was so authorized. We find no error in this assessment.

V. APPLICATION OF THE USE TAX TO IN-STATE RETAIL SALES

Finally, the taxpayer objects to an assessment of compensating tax on its purchase of antifreeze from a Standard Oil retail sales outlet in Kansas City. The service station did not collect sales tax on J. G.'s $383 purchase in October 1977. The tax involved is about $11.50. So far as is disclosed by the record, this transaction took place entirely within this state.

K.S.A. 79-3603 (Weeks 1969) imposed a sales tax of 3% upon the total selling price received from the sale of personal property at retail within this state. The following section, 79-3604, required the consumer to pay the tax to the retailer, and imposed a duty upon the retailer to collect the tax. Section 79-3607 required the retailer to file a monthly return to the director of revenue, and to pay to the director the amount of the tax imposed by the Act. Ensuing sections contain provisions for penalties and interest and for the enforcement of the act by the director against delinquent retailers.

The State contends that it is authorized by K.S.A. 79-3703 to collect compensating tax from the consumer where the sales tax is not charged, collected or paid by the retailer. That section reads in part:

"All property purchased or leased within or without this state and subsequently used, stored or consumed in this state shall be subject to the compensating tax if the same property or transaction would have been subject to the Kansas retailers' sales tax *had the transaction been wholly within this state.*" (Emphasis added.)

The difficulty with this argument is that the transaction *was* wholly within this state. The statutes authorized the State to collect the sales tax from the retailer, not directly from the consumer. We find no provision in the statutes authorizing the State to invoke the provisions of the compensating tax act and proceed directly against the consumer where the sales transaction was wholly within this state and subject to the provisions of

the Sales Tax Act. The taxpayer is correct in its objection to this assessment.

The judgment is modified by deleting therefrom the assessment for compensating tax and any interest and penalties based upon the retail purchases made by the taxpayer through the Standard Oil retail sales outlet in Kansas City, Kansas. In all other respects, the judgment is affirmed.