(753 P.2d 304)

No. 60,818

In the Matter of the Tax Appeal of NEWTON COUNTRY CLUB COMPANY.

Petition for review denied June 22, 1988.

Opinion filed April 14, 1988.

*Robert D. Myers*, of Robert D. Myers, P.A., of Newton, for the appellant, Newton Country Club Company.

*Thomas E. Hatten*, legal services, and *Mark A. Burghart*, general counsel, of the Kansas Department of Revenue, for the appellee.

Before SIX, P.J., BRISCOE and BRAZIL, JJ.

BRISCOE, J.: The Newton Country Club (Club) appeals from an

order of the Board of Tax Appeals (BOTA). By its order, the BOTA upheld an order by the Director of Taxation that denied the Club's request to set aside deficiency assessments issued against it for noncollection and payment of sales and liquor excise taxes.

On June 15, 1983, the Kansas Department of Revenue (Revenue) issued notices to the Club of assessments of additional sales and excise taxes. The assessments covered a three-year period from April 1, 1980, through March 31, 1983. Revenue based its assessments upon the Club's failure to pay sales and excise taxes on the 15 percent "mandatory gratuity" charged to customers on the sales of food and liquor at the Club's restaurant and bar.

The Club is a nonprofit private club that maintains a restaurant and bar for its members' use. The Club issued separate tickets to its member customers for sales of food and for sales of liquor. A mandatory gratuity of 15 percent of the price of the food or liquor was charged the customers by the Club. The amount was separately stated on each ticket and, every 30 days, member customers were billed for their purchases, including the 15 percent gratuity.

The gratuities were pooled and the Club distributed the 15 percent gratuity to its service employees, including waiters, waitresses, and bartenders, according to total hours worked. Employees were paid with a single check each month, which included both the hourly wage and the gratuity. The Club withheld income tax on the gratuity and reported it on the employees' W-2 forms.

The Club appealed the assessments by Revenue to the Director of Taxation. On June 8, 1984, the Director upheld the assessments. The Club requested and was granted a formal hearing and, on April 23, 1985, the Director again issued an order upholding the assessments. The Club appealed to the BOTA. A formal hearing was conducted and the BOTA issued an order upholding the Director's order. The Club moved for rehearing and, on April 10, 1987, the BOTA issued an order sustaining its original order in its entirety.

## I. Jurisdiction.

Is this appeal subject to dismissal as untimely filed? The

BOTA ruled on the Club's motion for rehearing on April 8, 1987. The Club filed its notice of appeal from that ruling on May 11, 1987, beyond the 30-day limitation of K.S.A. 1987 Supp. 77-613(b). Upon review of the applicable provisions of the Act for Judicial Review and Civil Enforcement of Agency Actions (Act), K.S.A. 77-601 *et seq.*, we conclude the appeal is timely.

According to K.S.A. 1987 Supp. 74-2426(b), an order issued by the BOTA following a rehearing is a final order subject to review in accordance with the Act. The Act requires the filing of a petition for review of an order within 30 days after service of the order. K.S.A. 1987 Supp. 77-613(b). Service may be made by delivering or mailing a copy of the order to the parties. Service by mail is complete upon mailing. Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after service of an order, pleading, or other matter and it is served by mail, three days shall be added to the prescribed period. K.S.A. 1987 Supp. 77-613(d).

Here, the BOTA's order on rehearing was dated April 8, 1987, and certified on April 10, 1987. The record contains a copy of a certified mail receipt indicating the order was mailed on April 10, 1987. Since April 10 was the date of mailing and the order was certified on April 10, we conclude the order was mailed no earlier than April 10. Under 77-613(b), the appeal must be filed within 30 days of service. Service in this case was by mail. Under 77-613(d), service was completed when the notice was mailed, which was no earlier than April 10. The Club's notice of appeal was filed on May 11, 1987. Under K.S.A. 60-206(a), the day of the act or event from which the 30-day period for appeal begins to run is not counted. Therefore, the period begins on April 11 and concludes on May 10, which was a Sunday. Under 60-206(a), the last day of the period cannot fall on a Saturday or Sunday and, therefore, the 30-day period ended on Monday, May 11. The Club's filing of its notice of appeal on May 11 was timely.

## II. Taxability of mandatory gratuities.

The central issue in this case is whether a mandatory gratuity charged by a private club to its customers on sales of food and liquor is subject to sales and liquor excise taxes. This is an issue of first impression. The term "mandatory gratuity" as used in this

opinion refers to a mandatory charge to customers which is distributed to employees by the employer.

K.S.A. 79-3603 imposes a sales tax on gross receipts received by a private club from the sales of meals and drinks:

"For the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the services taxable under this act, there is hereby levied and there shall be collected and paid a tax as follows:

. . .

"(d) a tax at the rate of 3% upon the gross receipts from the sale of meals or drinks furnished at any private club or at any restaurant, eating house, dining car, hotel, drugstore, or other place where meals or drinks are regularly sold to the public."

"Gross receipts" is defined in K.S.A. 79-3602(h):

" 'Gross receipts' means the total selling price or the amount received as defined in this act, in money, credits, property or other consideration valued in money from sales at retail within this state; and embraced within the provisions of this act."

"Selling price" is defined in K.S.A. 79-3602(g):

" 'Selling price' means the total cost to the consumer exclusive of discounts allowed and credited, but including freight and transportation charges from retailer to consumer."

K.S.A. 79-41a02 imposes an excise tax on sales of liquor by clubs:

"(a) There is hereby imposed, for the privilege of selling alcoholic liquor, a tax at the rate of ten percent (10%) upon the gross receipts derived from the sale of alcoholic liquor by any club."

K.S.A. 79-41a01(c) provides:

" 'Gross receipts derived from the sale of alcoholic liquor' means the amount charged the consumer for a drink containing alcoholic liquor, including any portion of that amount attributable to the cost of any ingredient mixed with or added to the alcoholic liquor contained in such drink."

In its order, the BOTA found the mandatory gratuity charged by the Club was part of the Club's gross receipts under both the sales and excise tax statutes and was therefore subject to taxation. The following factors support the BOTA's conclusion: (1) customers must pay the gratuity to receive food or liquor; and (2) the gratuity is treated as compensation to the employees. The BOTA also found that K.A.R. 92-24-11 applies only to the liquor excise tax. According to the BOTA's interpretation of the regulation,

gratuities are exempt from the excise tax in two instances: (1) when the customer gives a direct cash gift to the employee; or (2) when the customer voluntarily designates an additional amount on his credit card statement.

When this court reviews an order of an administrative agency involving the interpretation of a statute, it is free to substitute its judgment for that of the agency. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 453, 691 P.2d 1303 (1984). However, the legal interpretation of a statute by an administrative agency charged with its enforcement is entitled to a great deal of judicial deference. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 809, 667 P.2d 306 (1983). The ruling of an administrative agency on questions of law, while not as conclusive as its findings of fact, is persuasive and given great weight, and may carry with it a strong presumption of correctness, especially if the agency is one of special competence and experience. *Kansas Bd. of Regents*, 233 Kan. at 810.

As with other statutes, the function of this court in interpreting tax statutes is to give it the effect intended by the legislature. *Kansas Krude Oil*, 236 Kan. at 455. Tax statutes are considered penal in nature and thus are strictly construed in favor of the taxpayer. This rule of strict construction, however, does not permit a disregard of manifest legislative intention appearing from plain and unambiguous language of the statute. *J.G. Masonry, Inc. v. Department of Revenue*, 235 Kan. 497, 500, 680 P.2d 291 (1984). The rule of strict construction means that ordinary words are to be given their ordinary meaning. *Kansas Krude Oil*, 236 Kan. at 455.

Our analysis of both sales and liquor excise tax statutes will be treated together. Both taxes are imposed for the privilege of selling either food and drink (sales) or alcoholic liquor (excise). Both taxes are imposed as percentages of gross receipts received from such sales. Under the sales tax act, gross receipts includes the "selling price," which is in turn defined as "total cost to the consumer." K.S.A. 79-3602(g). Under the excise tax, "gross receipts" is defined as "the amount charged the consumer for a drink containing alcoholic liquor." K.S.A. 79-41a01(c). Therefore, the definitions of gross receipts under both acts are substantially the same.

Although we have found no Kansas cases addressing the issue of the taxability of mandatory gratuities, a number of other jurisdictions have addressed the issue. An annotation of these cases may be found at 73 A.L.R.3d 1226. These cases indicate that courts have applied one of two tests to determine the taxability of gratuities. The first, characterized as the "mandatory-voluntary" test, concentrates on the voluntariness of the gratuity. If the court concludes that customers are required to pay the gratuity, in most cases the gratuity is taxable. If, however, the court concludes that payment of the gratuity is voluntary, the gratuity is not taxable. The second, characterized as the "benefit" test, determines whether the employer is deriving any benefit from charging the mandatory gratuity, such as retaining some of the funds or applying them to meet minimum wage or contractual wage obligations. If the employer is deriving a benefit, the gratuity is taxable. If the employer derives no benefit, the gratuity is not taxable. Courts which apply the benefit test tend to view mandatory gratuities as merely a substitute for tipping and therefore reject the "mandatory-voluntary" classification.

The Club argues that we should apply the benefit test in this case. Under this test, the Club argues, the mandatory gratuity would not be taxable because the Club derived no benefit from it. It notes that none of the funds were retained by the Club, but were paid to its employees each month. Furthermore, the payments to the employees from the funds were not used to meet the Club's obligation to pay contractual or minimum wages. The Club argues it was merely acting as a conduit to channel the gratuities to the employees.

Revenue argues the mandatory-voluntary test is applicable. The mandatory gratuity is taxable, Revenue argues, because customers are required to pay it. According to Revenue, the mandatory nature of the charge makes it part of the "total cost to the consumer," taxable under the sales tax statute, and part of the "amount charged the consumer for a drink," taxable under the excise tax statute. Revenue also argues the service charge is taxable under the clear words of the statute even if the Club derives no benefit from it.

We conclude that, under the plain language of the statutes, mandatory gratuities are subject to sales and excise taxes. As previously stated, the function of this court is to give effect to the intention of the legislature. Although the tax statutes are given strict construction, this does not permit us to disregard the intent of the legislature which appears in clear and unambiguous language. *J.G. Masonry*, 235 Kan. at 500. We must give ordinary words used in the statutes their natural and ordinary meanings. *Kansas Krude Oil*, 236 Kan. at 455; *Jackson v. City of Kansas City*, 235 Kan. 278, 319, 680 P.2d 877 (1984). The sales tax is imposed on the "gross receipts," defined as the "selling price or the amount received . . . from sales at retail within this state." K.S.A. 79-3602(h). "Selling price," in turn, is defined as the "total cost to the consumer." K.S.A. 79-3602(g). Here, the customer is required to pay a mandatory gratuity as part of the monthly billing for food and drinks. As such, this mandatory gratuity is part of the "total cost to the consumer" and is taxable. The excise tax is imposed upon "gross receipts," defined as "the amount charged the consumer for a drink containing alcoholic liquor." K.S.A. 79-41a01(c). Here again, the mandatory gratuity must be paid on each drink purchased and is therefore part of the "amount charged for a drink" and taxable.

The Club's argument that the charge is taxable only if the Club benefits is not supported by the language of the statute. Under both statutes, the amount taxable is determined by what the consumer was required to pay. Taxability does not depend on whether the vendor derived any benefit from the amount charged.

The Club also cites cases which hold that mandatory gratuities like those here are merely outgrowths of the social custom of tipping and should therefore be treated the same. This reasoning is not compelling because tips and mandatory gratuities are easily distinguished. Mandatory gratuities are billed to the customer and must be paid; however, tips need not be paid. Although there might be great social pressure to pay a tip, the final decision of whether or not to pay a tip rests with the customer. Clubs might indeed choose to adopt the mandatory gratuity practice in lieu of voluntary tipping. Once the charge becomes mandatory, however, it becomes part of the cost to the customer and is taxable under the statutes.

The Club contends the mandatory gratuity was not truly mandatory because the Club itself imposed the charge on its membership. It is not clear from the record, however, if the membership approved the charge. Even if members themselves voted to impose the charge, the Club's argument is not convincing. Club members or guests who did not vote for the mandatory gratuity did not consent to paying it. Furthermore, the statutes plainly impose the taxes on the "total cost" and the "amount charged" the consumer, without regard to how such cost is determined.

### III. Is the BOTA's interpretation of K.A.R. 92-24-1 (1980 Supp.) clearly erroneous?

The assessments at issue covered a three-year period from April 1, 1980, through March 31, 1983. K.A.R. 92-24-1 (1980 Supp.) was in effect for a portion of this period and read as follows:

"The gross receipts derived from the sale by a club, as defined in K.S.A. 1979 Supp. 41-2601, of a drink containing alcoholic liquor, including any portion of the amount charged for any ingredient mixed with or added to the alcoholic liquor, is subject to a tax at the rate of ten percent (10%). The tax shall apply to ingredients whether mixed by the licensee or sold separately. The term 'gross receipts' shall also include charges made incidental to charges for drinks containing alcoholic liquor including, but not by way of limitation, service charges, corkage charges, cooling charges, serving charges, fees or charges for the use of club-owned equipment incidental to the serving of drinks containing alcoholic liquor and, except as hereinafter provided, gratuities. *Gratuities shall not be included within the gross receipts subject to the tax if such gratuities are voluntarily given by the consumer or are separately stated on a billing statement and are entirely distributed to employees of the club not in the form of wages, salaries or other compensation.* Where alcoholic liquor is provided by a club in connection with room rental, soft drinks, water and ice and a single fee or charge is made for all such property or services, the entire fee or charge, less the amount normally charged for the room rental is subject to the tax." (Emphasis added.)

K.A.R. 92-24-1 (1980 Supp.) remained in effect until October 25, 1982, when a temporary regulation (K.A.R. 92-24-11 [1983 Supp.]) became effective. This temporary regulation was in effect for the balance of the assessment period at issue. Temporary regulations are given the same force and effect as permanent regulations. See *Country Club Home, Inc. v. Harder*, 228 Kan. 802, 623 P.2d 505 (1981). On May 1, 1983, this temporary regu-

lation became permanent. The temporary regulation, K.A.R. 92-24-11 (1983 Supp.), amended the fourth sentence of 92-24-1 to substitute the term "source record" for the term "billing statement":

"Gratuities shall not be included within the gross receipts subject to the tax if the gratuities are voluntarily given by the consumer or are separately stated on a *source record* and are entirely distributed to employees of the club licensee not in the form of wages, salaries or other compensation." (Emphasis added.)

"Source record" is defined as:

"(1) A dated customer service check or ticket;

"(2) a dated cash register tape, if coded to reflect the required information; or

"(3) an equivalent of the check, ticket or tape in a form approved by the director." K.A.R. 92-24-9(d) (1983 Supp.).

The amended version of the regulation as reflected in the permanent regulation, K.A.R. 92-24-11, was in effect at the time of the BOTA hearing and was followed by the BOTA in rendering its decision. We note there is no parallel regulation for the sales tax statute.

The Club contends the BOTA's interpretation of K.A.R. 92-24-11 is erroneous. The BOTA interpreted the regulation to apply only to the liquor excise tax. It also found that gratuities are exempt from the excise tax in two instances: (1) the customer gives a direct cash gift to the employee, or (2) the customer voluntarily designates an additional amount on his or her credit card statement.

The Club argues that K.A.R. 92-24-11 expressly provides for exemption of mandatory gratuities like those charged in this case. According to the Club, gratuities are exempt (1) when voluntarily given by the customer, *or* (2) when stated on a source record and entirely distributed to employees not in the form of wages, salaries, or other compensation. The Club contends gratuities under (2) need not be voluntary. The Club's argument that the regulation exempts mandatory gratuities turns on their interpretation of the fourth sentence of 92-24-11, quoted above. The Club argues all voluntary gratuities are covered by the first part of the sentence. Therefore, the only gratuities left to be covered under the second part are involuntary or mandatory gratuities. The Club also contends the regulation should apply to sales tax as well.

Revenue responds that such an interpretation of the regulation would conflict with the statute, which makes mandatory gratuities taxable. The BOTA interpreted the regulation to cover only voluntary gifts from the customer: "A gratuity is a gift. When appellant forces its customers to pay more, it is no longer a gratuity." According to the BOTA, the first part of the disputed sentence covers voluntary cash gifts. The second part covers voluntary designation of a gratuity on a credit card statement. Under both situations, the actions must be voluntary.

An agency's interpretation of its own rules and regulations is given deference and will not be disturbed on appeal unless the interpretation is clearly erroneous or inconsistent with the regulation. *Kansas Bd. of Regents*, 233 Kan. at 809. In the absence of a voluntary statutory provision, however, an administrative agency may not under the guise of a regulation or order substitute its judgment for that of the legislature. It may not alter, modify, or enlarge the legislative act which is being administered. *Kansas Krude Oil*, 236 Kan. 450, Syl. ¶ 2.

We have concluded the liquor excise tax statute requires taxation of the mandatory gratuities at issue here. If the statute requires taxation of these mandatory charges, the BOTA's interpretation of 92-24-11 is consistent with this intention. If, however, the BOTA's interpretation is incorrect and either 92-24-1 or 92-24-11 exempts mandatory gratuities, the regulation would be at odds with the statute and invalid.

The BOTA's interpretation of 92-24-11 is consistent with the intent of the legislature as expressed in the liquor excise tax statute. Under the statute, the determining factor is whether the charge is mandatory and, therefore, a part of the "amount charged the consumer." Under the BOTA's interpretation of 92-24-11, gratuities are exempt only if they are voluntary. Our reading of 92-24-1 would lead us to the same conclusion. The use of the term "billing statement" in 92-24-1 does not affect the requirement that the gratuity must be voluntary to be exempt. If the charge is mandatory, it is taxable under the statute.

The BOTA's interpretation is also consistent with the language of both 92-24-1 and 92-24-11. As the BOTA found, the common meaning of "gratuity" is "gift." Therefore, only voluntary contributions are covered by either regulation. If the regulations

address only voluntary contributions, the BOTA's conclusion that the first part of the disputed sentence covers direct cash gifts and the second part covers credit transactions is reasonable. Although we read the terms "billing statement" and "source record" to cover more than just credit transactions, we agree with the thrust of the BOTA's conclusion that only voluntary contributions are exempt from liquor excise tax. Finally, the regulations by their own terms apply only to liquor excise tax.

Affirmed.