CEDAR RAPIDS & MARION CITY RAILWAY COMPANY, Appellee,
v. CITY OF CEDAR RAPIDS, Appellant.

**STATUTES:** Construction—"Flooring" on Bridges—Street Railways to Construct—Intention of Legislature. Statute language should be given that meaning and effect which best accords with

approved usage, judged in the light of the particular connection in which it is used. *Held*, the provision of Sec. 1056-a44, Code Sup., 1913, providing that street railway companies "shall construct, reconstruct and repair the *paving or flooring*" on bridges used by them, refers to and includes not only the planked *surface*, but the stringers, joists and supporting timbers laid upon the steel structure and furnishing the support on which the planking is laid.

BRIDGES: Regulation of Use—Street Railways—Duty to Construct,
2   Etc.—Nature of Duty.  A statutory requirement that street railways shall "construct, reconstruct and repair", within certain specified limits, the paving or flooring on public bridges occupied by them, is not an exercise of the "taxing" power, but is a prescribing of a condition on which such companies are permitted to occupy and make use of the public streets and bridges.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

WEDNESDAY, JANUARY 12, 1916.

THE opinion states the material facts.—*Reversed.*

*F. F. Dawley*, City Solicitor, *C. F. Luberger*, Assistant City Solicitor, for appellant:

*Don Barnes* and *Frank H. Randall*, for appellee.

WEAVER, J.—The plaintiff street railway company appealed to the district court from a special assessment levied by the city council of Cedar Rapids for the company's alleged proportion of the cost of reconstructing and repairing the floor of a bridge across the Cedar River, at First Avenue in that city. The district court sustained the company's contention and reduced the assessment from $4,667.05 to $2,123.60; and from this finding, the city brings the case by appeal to this court. There is no dispute as to the facts, the sole question in issue being the construction of the statute under which the assessment was made.

So far as it relates to this controversy, the language of that statute is as follows:

"That in every such city the owner of any street railway

*[margin note: 1. STATUTES: construction; "flooring" on bridges: street railways to construct: intention of legislature.]*

occupying or using any bridge shall construct, reconstruct and repair the paving or flooring on said bridge three and one-half feet each way from the center line of the space between the rails of its tracks, the same to be ordered, done, assessed and paid for in the manner provided for paving in sections eight hundred thirty-four and eight hundred thirty-five of the code." Sec. 1056-a44, Code Sup., 1913.

The railway company has a double track laid upon the bridge in question. By proceedings the regularity of which is not questioned, the city ordered the reconstruction and repair of the floor of the First Avenue bridge. When the work was completed, the total cost thereof was found to be $6,748.05, of which sum the council, as we have already noted, levied $4,667.05 upon the railway. The company objected to the assessment as excessive. Whether the objection is well taken is made to turn upon the inquiry as to just what is contemplated by the statutory provision that the railway company shall "construct, reconstruct and repair the paving and flooring on said bridge three and one-half feet each way from the center line of the space between the rails of its tracks". In other words, is this duty or requirement limited to the planked surface on which the tracks are laid over the bridge, or does it include the stringers, joists and supporting timbers laid upon the steel structure and providing the support on which the planking is laid? The railway company takes the affirmative of the first question, and the trial court adopted its view in this respect.

The main structure of the First Avenue bridge is of iron or steel; while the planking and its supports laid over or upon the steel structure are of wood. That the old planking and timbering had become more or less decayed and weakened and that its reconstruction was a reasonable and proper undertaking is not denied. The wooden structure and planking, or (to use the phrase employed by the city's engineers) "the floor system" laid upon the steel structure, has no structural connection with it, except as the steel frame furnishes the

permanent support for the roadway or passage thus provided for public use.

The industry of counsel on either side has failed to discover any precedent where the statutory language here employed has received judicial construction, and it becomes necessary for us to give to it the meaning and effect which shall best accord with approved usage and with the apparent legislative purpose, as we may gather the same from the general features of the statute itself. Availing ourselves of the labors of counsel in collating definitions from lexicons and technical works by writers of distinction, we find the following cited on behalf of appellant:

A high English authority, Gwilt's Encyclopedia of Architecture, page 1198, says:

"FLOOR. The pavement or boarded lower horizontal surface of an apartment. It is constructed of earth, brick, stone, wood, or other materials. Carpenters include in the term *the framed timber work* on which the boarding is laid, as well as the boards themselves. In carpentry, it denotes the timbers which support the boarding, called also *naked flooring* (see p. 597.) and *carcass flooring.*" On page 597 he says, under the title of

"FLOORS. The assemblage of timbers in a building, used for supporting the flooring boards and ceiling of a room, is, in carpentry, called *naked flooring,* whereof there are three different sorts, viz. *single flooring, double flooring* and *double-framed flooring.*"

In the Standard Dictionary the word "flooring" is defined as:

"(1) Material from which to make a floor; (2) Floors collectively; a floor." And in a sub-title under the same word the following is given,

"Naked flooring, (Arch.) the unboarded joists of a floor."

An American authority is the Dictionary of Architecture & Building, by Russell Sturgis (1902). Under the title "Floor," in Definition A, he refers to it as

"Generally the upper surface of a *construction*, rather than a surface laid solid upon earth or filling between solid walls." He then gives the following additional definition.

"B.  The entire horizontal structure for the support of a floor in sense A, together with such a floor itself.  In this sense the whole system of timbers or iron beams, including girders, summers, binding beams, trimmers, headers and ordinary *joists or floor beams* are included as well as the upper surface, the arrangements for deafening, and perhaps the deafening itself, and even the finish beneath; (for which see Ceiling). In the following sub-titles the reference is to sense B, unless otherwise specifically stated:

"Naked Flooring.  A.  The framing which forms the constructional part of the floor without the flooring and ceiling. B.  One in which the floor joists extend from wall to wall."

Also the following:

"Flooring.  Same as floor in sense A, or the material prepared for such a floor.  In the United States this is the general term for the material used for finishing a floor; that is, for providing the smooth and level surface upon which we walk; it corresponds with roofing, siding, sheathing, and with ceiling in its more restricted sense A."

The New International Encyclopedia (2nd Ed. 1915) Vol. VIII, page 698, under the title "Floor" says,

"The term is moreover employed in buildings, by the usage of both countries, to designate not merely the surface or floor proper but also the entire construction which provides and supports it.  The flooring is the material which forms this surface."

The Century Dictionary, Vol. IV, p. 2278 (Rev. Ed. 1911), under the word "flooring" has the following sub-title,

"Naked Flooring.  In carpentry the timber or framework on which the floor-boarding is laid."

The Encyc. Brittanica, Vol. V, p. 389 (11th Ed.), under the title "Carpentry" says:

"Single flooring (fig. 23) consists of one row of wood

joists resting on the wall or partition at each end without any intermediate support, and receiving the floor boards on the upper surface and the ceiling on the under side.''

Then follows further description of single flooring and then the following:

''Double Flooring (fig. 25) consists of single fir joists . . . called binding, bridging and ceiling joists, but these are very little used now and the single fir joists and steel girders have taken their place.''

In the Architects' & Builders' Pocket-Book by Frank E. Kidder, an American consulting architect and structural engineer, it is said (page 652),

''Wooden floors usually consist of beams, commonly called 'joists' or 'floor joists', one or two thicknesses of flooring boards, and, in a finished building, of a ceiling underneath the beams.''

On the part of appellee, it is argued that the word ''flooring'' employed in the statute is a less comprehensive term than ''floor'', and that such distinction is recognized by the authorities relied upon by appellant.   Counsel also note the following additional definition from the New International Encyclopedia, as follows:

''FLOOR:   In architecture, the horizontal surface which forms the bottom plane of any inclosed building or part of a building, or the *top surface of a bridge,* terrace or platform.''

Also, the following from Murray & Bradley's New English Dictionary:

''FLOOR:   1st. The layer of boards, brick, stone, etc., in an apartment on which people tread.

''2d.   The framework or structure of joists supporting the *flooring* of a room.''

Turning to the more familiar authorities, we find the same variety and range of definition.   For example, in Webster's New International Dictionary, it is given:

''FLOOR:   (1) The bottom or lower part of any room; the part upon which we stand;   . . .

"(3) The structure formed of beams, girders, etc., with proper covering, which divides a building horizontally into stories;

"(4) The surface, or the platform, of a structure on which to walk or travel; as, the floor of a bridge."

The same work defines "flooring" as "(a) a platform, floor or pavement; (b) material for a floor or floors."

These are sufficient to demonstrate that these words, as is the case with practically every other descriptive word or term in our language, are variable in meaning, and have more or less comprehensive significance, according to the particular connection in which they are used. Take, for example, the word "roof". If we speak of a roof as a place, we ordinarily mean the upper or exposed surface of the cover or top of a building or other enclosed structure. If, however, one speaks of the construction of a roof, the idea suggested is not limited to the mere surface of the cover, but includes as well the materials and construction required to carry and maintain it in its proper place upon the walls. The word "window" may mean a mere opening through the wall or side of a building for the admission of light and air; or the sash with its fittings, intended to be placed in such opening; or it may mean such opening in its completed form, with sash, casement or shutters fitted in place.

It is evident from the authorities cited, and a matter of common knowledge and usage as well, that "floor" may mean the mere bottom plane of an enclosure or artificial structure,— the surface on which we walk, ride or travel; or it may mean such surface or plane, together with the timbers, framework and materials which enter into and form part of its construction. So of the word "flooring". If used without reference to a structure in its completed form, it would ordinarily convey the idea of materials suitable for use in constructing a floor, or, in a narrower sense, the boards or planks for covering the framework of a floor. When used with reference to a completed structure, it may mean either the materials of

which the floor is composed, or the completed floor structure.
When not attempting to speak with technical exactness, the
words "floor" and "flooring" may be, and we think are often,
used as synonymous or interchangeable terms.   Take, for
example, the manner and connection in which the word is
employed in this statute, "shall construct, reconstruct and
repair the paving or flooring on said bridge".  Paving and
flooring are here coupled and used in the same relation to
the subject matter of the act.  If, instead of using the par-
ticipial form of these nouns, the legislature had said, "shall
construct, reconstruct and repair the pavement or floor on
said bridge", would it change or modify in the least the mean-
ing intended to be conveyed?  We think not.  If the bridge
were to be provided with a paved floor, instead of a floor of
timber and plank, counsel would hardly argue that the duty
or obligation to construct and reconstruct did not include the
requirement to furnish or pay for the materials,—sand,
cement, stone, asphalt or other essential parts,—and the labor
necessary in combining and constructing the same into a
finished roadway.  If such was the intention of the legislature,
when speaking of the construction and reconstruction of the
paved floor of a bridge, and if, in such case, the obligation
placed upon the railway company is to bear the entire ex-
pense of the paving within the prescribed limits, it would
seem quite unreasonable to say that the obligation to construct
and reconstruct a floor comprised of timber and planking,
though provided for in the same section and coupled in the
same sentence, is limited to its share of the expense of laying
the planked surface alone.  The words "construct" and "re-
construct", which are used in stating or defining the com-
pany's obligation, are of quite broad and comprehensive
significance, and should have due consideration in giving effect
to the provision as a whole.  If the city lets a contract to one
person to erect an iron bridge such as we are here dealing
with, and to another person the contract for constructing
the wooden floor over such bridge, could there be any doubt

that the undertaking of the latter included the entire wooden structure by which public travel along the street is afforded passage over the stream? If so, then by what logical or legal ground shall we say that the appellee's duty to share the expense of its re-construction stops short with the expense of resurfacing the timber or frame which constituted part of the original construction? Indeed, we see no fair way of escape from the conclusion that the legislative intent, as expressed in this statute, is to place upon the railway company the obligation, within the measured limits there prescribed, to pay the entire cost of constructing, reconstructing and repairing the floor of the bridge, whether it be a floor of pavement or wooden or other materials, and that in neither case can the court, by any process of interpretation, properly limit that liability to the mere expense of providing or maintaining a surface or cover for supporting timbers or framework to be provided by the city.

Counsel for appellee invoke the benefit of the rule that the exercise of the power of taxation by a city must be limited to the plain scope and purpose of its statutory authority, and that, wherever doubt or ambiguity exists, it should be resolved in favor of the property owner and against the municipality. The fact situation hardly brings it within the limits of that rule. The duty to pay this expense is not imposed by the city. It is created by the statute, not as an exercise of the state's taxing power, but as prescribing one of the conditions on which such companies are permitted to occupy and make use of the public streets and bridges for carrying on their traffic. True, this obligation does not become effective until the city, by its constituted authorities, has provided for a work of construction, reconstruction or repair, to which the company is called upon to contribute; but the duty to make such contribution and the proportion and limit thereof are fixed by statute. Of course, the authority of the city is not unlimited, and must be reasonably exercised. In

2. BRIDGES: regulation of use: street railways: duty to construct, etc.: nature of duty.

the case at bar, however, there is no complaint that the city has not proceeded regularly or that the assessment is excessive if, under the law, the appellee's duty to reconstruct its proportion of the bridge extends to the entire floor structure, and is not-limited to the simple expense of replanking.  We find nothing in the statute so doubtful, ambiguous or obscure as to require us to limit its effect in this manner, and we are constrained to hold that the court below erred in reducing the assessment made by the city council.

Neither party has suggested that anything is to be gained by ordering a new trial in the event of a conclusion such as is here announced.  Indeed, it was stipulated below that, if the court should find the basis of the assessment made by the city council to be the correct one, then the assessment should be affirmed.  It is therefore ordered that the judgment appealed from be reversed, and that the assessment made against the appellee by the city council for the appellee's share of reconstructing the floor of the First Avenue bridge in the city of Cedar Rapids be and it is affirmed as made and as of the date thereof, in the sum of $4,667.05, and that the costs be taxed to the appellee.—*Reversed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.