(861 P.2d 1386)
No. 69,253

In the Matter of the Appeal of BRUCE McKEE d/b/a/ McKEE POOL & LANDSCAPE from a Notice of Assessment of Additional Retailers' Sales Tax Dated April 28, 1989.

Opinion filed November 5, 1993.

*Bruce D. Woolpert,* of Hardesty & Puckett and Woolpert, of Topeka, for appellant Bruce McKee.

*Frank Reeb*, *Michael M. Rehm*, and *Mark A. Burghart*, general counsel, of Kansas Department of Revenue, for appellee.

Before LARSON, P.J., ELLIOTT and PIERRON, JJ.

LARSON, J.: Bruce McKee d/b/a McKee Pool and Landscape appeals an order of the Board of Tax Appeals (BOTA) finding that labor services involved in the construction and installation of 18 in-ground outdoor swimming pools were not exempt from sales tax pursuant to K.S.A. 79-3603(p).

McKee's primary business is the construction and installation of swimming pools and other related work. The Kansas Department of Revenue Division of Taxation (KDR) conducted a field audit of his business for the period March 1, 1986, through December 31, 1988. After the audit, KDR determined McKee was subject to additional retailers' sales tax on unreported sales of $95,723, which was the amount of labor service to construct and install 18 in-ground outdoor swimming pools during that time period. McKee did not collect or remit sales tax for this labor service. KDR assessed additional retailers' sales tax, penalty, and interest totalling $5,820 pursuant to K.S.A. 79-3603(p). The relevant state sales tax rate was 4% for the time period in question.

All of the swimming pools are in-ground outdoor pools. None are enclosed by a building. The pools were built adjacent to previously existing homes.

K.S.A. 79-3603 provides that a retailers' sales tax shall be collected and paid upon:

"(p) the gross receipts received for the service of installing or applying tangible personal property which when installed or applied is not being held for sale in the regular course of business, and whether or not such tangible personal property when installed or applied remains tangible personal property or becomes a part of real estate, except that no tax shall be imposed upon the service of installing or applying tangible personal property in connection with the original construction of a building or facility or the construction, reconstruction, restoration, replacement or repair of a bridge or highway.

"For the purposes of this subsection:

"(1) 'Original construction' shall mean the first or initial construction of a new building or facility. The term 'original construction' shall include the addition of an entire room or floor to any existing building or facility, the completion of any unfinished portion of any existing building or facility and the restoration, reconstruction or replacement of a building or facility dam-

aged or destroyed by fire, flood, tornado, lightning, explosion or earthquake, but such term shall not include replacement, remodeling, restoration, renovation or reconstruction under any other circumstances;

"(2) 'building' shall mean only those enclosures within which individuals customarily live or are employed, or which are customarily used to house machinery, equipment or other property, and including the land improvements immediately surrounding such building; and

"(3) 'facility' shall mean a mill, plant, refinery, oil or gas well, water well, feedlot or any conveyance, transmission or distribution line of any cooperative, nonprofit, membership corporation organized under or subject to the provisions of K.S.A. 17-4601 *et seq.*, and amendments thereto, or of any municipal or quasi-municipal corporation, including the land improvements immediately surrounding such facility."

Also relevant is K.A.R. 92-19-66b, the labor services provision in the regulations governing the Kansas retailers' sales tax. Subsection (a) states in pertinent part: "Each contractor, subcontractor and repairman shall be responsible for collecting and remitting sales tax on taxable services performed for others."

Subsection (e) provides in relevant part: "The service of installing or applying tangible personal property for the addition of an entire room or floor to the exterior of an existing building or facility shall not be subject to sales tax."

Subsection (f) states:

"Services of installing or applying tangible personal property to complete unfinished portions of newly constructed buildings, facilities, shopping centers and malls as space within the building, facility, center or mall is leased or sold to the first or initial tenant of that space shall not be subject to sales tax. Services performed to install or apply tangible personal property for the completion of an unfinished portion of an existing building or facility shall not be taxable when:

"(1) The service being rendered was called for in the original blue print, building plan or building specification at the time original construction of the building or facility was started, including any change orders issued during the original construction of the building or facility;

"(2) the completion of the unfinished portion of the building or facility is within a time reasonably requisite to the original construction of the building or facility;

"(3) the service rendered would have been performed at the time of the original construction of the building or facility, except for circumstances beyond the owner's control. Those circumstances shall not include instances in which the project is essentially completed and usable for the purposes intended, but the owner merely fell short of funds, or when the owner, after taking possession or occupancy of the building or facility, contracts for additional services; and

"(4) the owner or occupant is the first or initial owner or occupant of the building or facility."

McKee argued before the Director of Taxation and BOTA that the labor service to construct and install the 18 swimming pools was tax exempt as "original construction." McKee contended the projects were exempt from sales tax pursuant to K.S.A. 79-3603(p) and K.A.R. 92-19-66b(e) because they qualified as additions to existing buildings, or, alternatively, the projects were exempt from the sales tax pursuant to K.S.A. 79-3603(p) and K.A.R. 92-19-66b(f) because they qualified as completions of original, unfinished buildings.

BOTA ruled in pertinent part:

"The Board agrees with the Department of Revenue that the Taxpayer's property tax arguments are irrelevant to this matter involving a sales tax issue. There are specific statutes and regulations that apply to sales tax matters which are separate from the statutes and regulations that apply to property tax matters. The Board further finds that the construction of the swimming pools were not the first or initial construction of a new building or facility. The Board further finds that a swimming pool is not within the definition of room or floor as those terms are commonly defined. Furthermore, the Board finds that the construction of the pools did not increase the available space of the homes. Therefore, the construction cannot be considered an addition. The Board finds that the construction of the pools cannot be considered a completion because the construction does not meet the provisions of K.A.R. 92-19-66b(f)(1-4). The Board further finds that the construction of the pools does not fit the definition of building as given in K.S.A. 79-3603(p)(2) because the pools are not an enclosure. Also the construction of the pools does not fit under the portion of K.S.A. 79-3603(p)(2) which provides that the definition of building includes 'the land improvements immediately surrounding such buildings' because the pools were constructed separately from the original construction of the homes. The evidence shows that most of the pools were constructed greater than one year after the homes were constructed. As stated by the Court in J.G. Masonry, it appears to not be within the legislative intent to exempt exterior improvements that are added to the property long after the completion date of the original building. "The Board agrees with the Taxpayer's analysis that distinguishes J.G. Masonry from this matter in that a swimming pool is a lot more like an addition than a wall constructed around a trash area. While the Board believes that a swimming pool is within the spirit of what the statute exempts, the subject pools are not close enough within the language to grant an exemption. Therefore, the Board concludes that the Taxpayer's request to have the labor services associated with constructing the subject pools exempted from sales tax should be denied and the Kansas Department of Revenue's assessment sustained."

On appeal, McKee contends: (1) BOTA erred in finding that labor services for the construction of the 18 in-ground outdoor swimming pools was not exempt from sales tax pursuant to K.S.A. 79-3603(p) as additions or land improvements immediately surrounding a building; (2) BOTA's interpretation of subsection (p) in denying that new in-ground outdoor swimming pools are additions like rooms and floors conflicts with the manifest purpose of K.S.A. 79-3603 and fails to read the statute according to its spirit and reason; (3) BOTA's finding that the swimming pools were not original construction as additions is ambiguous and inconsistent with other official language as well as common definitions, trade classifications, and the plain meaning of the words; (4) BOTA made an inequitable distinction between pools and rooms and floors, and that categorizing pools as land improvements only, with tax treatment accordingly, reflects administrative error; (5) BOTA's ruling that the addition of an in-ground outdoor swimming pool to an existing building is not entitled to tax exemption as original construction is penal and discriminatory in nature and may be counterproductive of property tax revenues in the end; and (6) KDR falsely claimed that a written policy regarding the taxability of labor services for the construction and installation of in-ground swimming pools was in existence during the audit period.

In *City of Liberal v. Seward County*, 247 Kan. 609, 611, 802 P.2d 568 (1990), our Supreme Court described the scope of review applicable to this case:

"We first note that, on appeal, orders of BOTA are subject to judicial review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* See K.S.A. 1989 Supp. 74-2426(c). Under that Act, the court's scope of review is controlled by K.S.A. 77-621, which this court recognizes as somewhat broader that the traditional three-pronged scope of review set forth in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 (1968). The applicable provision of the scope of review relevant here is set forth at K.S.A. 77-621(c)(4), which states that the court shall grant review only if BOTA 'has erroneously interpreted or applied the law.' The burden of proving the invalidity of the agency action is on the party asserting invalidity, which here would be the City. K.S.A. 77-621(a)(1)."

In arguing the in-ground outdoor swimming pools are additions to the existing houses to which they are connected, McKee asserts

the pools resulted in the enlargement of living and recreation space, which meets the requirements of additions under applicable case law, statutes, and regulations. McKee further contends the pools all fit within the definition of a room or floor because each has a floor, walls, lighting, steps and sometimes heating and seats. They are connected to the existing homes by above-ground patios and decks, and below-ground utility lines for water, lights, and drainage. McKee claims many of the pools include outbuildings to house filters and other pool equipment. McKee contends the addition of an in-ground swimming pool to a property is similar to adding a room to the exterior of a home for a sauna, gym, pool table, or other leisure or recreational activity and is not merely a land improvement such as landscaping.

Recently, in *In re Tax Appeal of Derby Refining Co.*, 17 Kan. App. 2d 377, 380-81, 838 P.2d 354 (1992), we restated the general rules applicable here:

> "In Kansas, taxation is the rule and exemption is the exception. *Assembly of God v. Sangster*, 178 Kan. 678, 680, 290 P.2d 1057 (1955). The burden of establishing an exemption from taxation is on the party claiming the exemption. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 454, 691 P.2d 1303 (1984). One who claims a tax exemption must bring himself clearly within the exemption provisions of the statute. *Warren v. Fink*, 146 Kan. 716, Syl. ¶ 1, 72 P.2d 968 (1937). Statutory exemption provisions are strictly construed against the party requesting exemption. *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 635, 694 P.2d 462 (1985). All doubts concerning exemption are to be resolved against the exemption and in favor of taxation. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 851, 473 P.2d 1 (1970)."

"Each retail sale is presumed to be taxable." K.A.R. 92-19-61(a). When KDR establishes that a transaction was a retail sale to a final user or consumer, the retailer shall have the burden of showing that the transaction was exempt from sales tax. K.A.R. 92-19-61(b)(2).

In *In re Tax Appeal of Atchison, Topeka & Santa Fe Ry. Co.*, 17 Kan. App. 2d 794, 844 P.2d 756 (1993), we stated the following rules applicable to the construction of tax statutes:

> "The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature. While the administrative interpretation of a statute should be given consideration and weight, it does not follow that a court will adhere to the

administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests with the courts." Syl. ¶ 2.

"Tax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it." Syl. ¶ 5.

Further, " '[w]hen a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be.' " *In re Tax Appeal of Derby Refining Co.,* 17 Kan. App. 2d at 382.

To McKee's argument that the swimming pools he constructed are additions, like rooms and floors, we point out that K.S.A. 79-3603(p)(1) clearly states that original construction shall include "the *addition of an entire room or floor* to any existing building or facility." (Emphasis added.)

We are not persuaded by McKee's arguments that a swimming pool is a room or floor. Webster's II New Riverside University Dictionary 1018 (1984) defines "room" as "[a] space that is or may be occupied . . . . [a]n area separated by walls or partitions from other similar parts of the structure or building in which it is located."

"A room . . . is a subdivision of a building, or the building itself where the structure contains but one room." *People v. Keller,* 96 Misc. 92, 97, 161 N.Y.S. 132 (1916). "In its ordinary sense the word 'room' means a single enclosure separated by partitions or other means from the other parts of a house or building." *Briggs v. State Farm Fire and Cas. Co.,* 680 S.W.2d 444, 445 (Mo. App. 1984). "A room is defined . . . as 'a space for occupancy or use enclosed on all sides, as in a building; an apartment; frequently named for the use to which it is put, as bed room, engine room, tool room.' " *Gardner v. Roosevelt Hotel, Inc.,* 175 Misc. 610, 611, 24 N.Y.S.2d 261 (1940), *rev'd on other grounds* 176 Misc. 546, 28 N.Y.S.2d 78 (1941).

We agree with the *Gardner* court that " 'it is hardly necessary to resort to lexicography to determine the meaning of the word

[room]. It is one of daily use and has a well-defined significa-tion.' " 175 Misc. at 612.

"Floor" is defined in Webster's II New Riverside University Dictionary 488 (1984) as "[t]he surface of a room on which one stands . . . . [t]he lower or supporting surface of a struc-ture. . . . [a] story or level of a building."

" 'Floor' has been defined as '[t]he surface, or the platform, of a structure on which to walk, work, or travel.' " *Burdette v. Rollefson Construction Co.*, 52 Cal. 2d 720, 725, 344 P.2d 307 (1959). " 'Floor' means a section of the building between hori-zontal planes." *Lowell v. Strahan*, 145 Mass. 1, 8, 12 N.E. 401 (1887). "It is . . . a matter of common knowledge and usage as well, that 'floor' may mean the mere bottom plane of an enclosure or artificial structure—the surface on which we walk, ride or travel; or it may mean such surface or plane, together with the timbers, framework and materials which enter into and form part of its construction." *Cedar Rapids, Etc., Co. v. City*, 173 Iowa 386, 392, 155 N.W. 842 (1916).

As a matter of common sense, an in-ground outdoor swimming pool is not a room or floor. The definition of "addition" found in *J. G. Masonry, Inc. v. Department of Revenue*, 235 Kan 497, 680 P.2d 291 (1984), does not advance McKee's contention. In *J. G. Masonry*, KDR assessed unpaid sales taxes on several service and business transactions. Two projects were offices J.G. Masonry built at the Perk Foods plant and the Midwest Conveyor plant. The offices were wholly within the plant buildings and were each described as a building within a building. J.G. Masonry con-tended these rooms were exempt from sales tax as original con-struction, arguing each was " 'the addition of an entire room . . . to [an] existing building.' " 235 Kan. at 499.

Our Supreme Court, in rejecting this contention, defined "ad-dition" as " 'a part added to or joined with a building to increase available space.' To add is to enlarge." 235 Kan. at 500. The court determined that neither project resulted in any increased available space in either plant, but the available space inside the plant was merely subdivided in order to make it usable for a particular purpose, and the original structures were not enlarged, just remodeled. 235 Kan. at 500.

Here, McKee attempts to use the word "addition" in isolation from the phrase "of an entire room or floor." This he cannot do. The language of K.S.A. 79-3603(p)(1) is clear and unambiguous; the addition must be "of an entire room or floor." The 18 swimming pools were not additions of entire rooms or floors.

An in-ground outdoor swimming pool is certainly not a building. We find the in-ground outdoor swimming pools in question here to be land improvements immediately surrounding the buildings, as included in the definition of building in K.S.A. 79-3603(p)(2). We recently defined an improvement on real property in *Barnett v. Oliver*, 18 Kan. App. 2d 672, Syl. ¶ 10, 858 P.2d 1228 (1993), as "that by which the value of anything is increased, its excellence enhanced, or the like, or an amelioration of the condition of property effected by the expenditure of labor or money for the purpose of rendering it useful for other purposes than those for which it was originally used or more useful for the same purposes." An in-ground outdoor swimming pool falls within this definition.

In *J. G. Masonry*, it was contended that the erection of masonry walls to screen and surround a trash and debris area outside of and adjacent to the existing Midwest Conveyor plant was exempt from sales tax as original construction, arguing it was a land improvement immediately surrounding the building. Our Supreme Court rejected this argument, stating:

"The first portion of 79-3603(*p*) imposes a sales tax; later, the same section exempts 'the original construction of a building.' Subsection (1) defines original construction as 'the first or initial construction of a new building,' and, as noted above, subsection (2) defines 'building' to include the land improvements immediately surrounding the building. Read together and taken in context, these provisions of the act exempt new buildings from the imposition of sales tax. Included within the initial exemption are all exterior improvements—steps, sidewalks, retaining walls, landscaping, and parking lots, for example—which are built or installed in connection with the original construction. The taxpayer urges a construction of the statute that would exempt any exterior improvements added to the property at a later date, long after the completion of the original building. This, it seems to us, is a strained construction, not within the legislative intent as expressed in the clear terms of the statute. The walls erected in the trash area, built as a separate project and not as a part of the original building construction, were not exempt from sales tax." 235 Kan. at 501.

The foregoing language from *J. G. Masonry* is controlling here. In this case, the swimming pools were not constructed as part of the "first or initial construction of a new building." The labor service to construct and install the swimming pools herein would have been tax exempt only if it involved "completion of any unfinished portion of any existing building." K.S.A. 79-3603(p)(1). McKee does not contest BOTA's conclusion that he failed to meet the provisions of K.A.R. 92-19-66b(f)(1)-(4). BOTA's finding on that issue is final.

McKee has failed to show that the labor service to construct and install the 18 in-ground outdoor swimming pools is tax exempt under the criteria of K.S.A. 79-3603(p).

BOTA did not err by reading together the provisions of K.S.A. 79-3603(p) when it determined that land improvements are tax exempt only in connection with the original construction or completion of a building, as McKee asserts. The provisions of an act must be construed together to give effect to the entire statute. *Guardian Title Co. v. Bell*, 248 Kan. 146, 151, 805 P.2d 33 (1991).

Nor do we find that BOTA's interpretation of K.S.A. 79-3603(p) conflicts with the manifest purpose of the statute in a discriminatory manner or fails to read the statute according to its spirit and reason. We cannot disregard the clear and unambiguous language of K.S.A. 79-3603(p). Although this court in *Sterling Drilling Co. v. Kansas Dept. of Revenue*, 9 Kan. App. 2d 108, 110, 673 P.2d 456 (1983), *rev. denied* 234 Kan. 1078 (1984), determined a careful examination of K.S.A. 79-3603(p) revealed "a° clear motive on the part of the legislature to promote real estate and mineral development generally," we recognize that the primary purpose of the Kansas Retailers' Sales Tax Act, of which K.S.A. 79-3603(p) is a part, is to raise revenue. To be exempt from taxation under K.S.A. 79-3603(p), a retailer simply must comply with its provisions.

Further, we find that BOTA's determination that the swimming pools in question were not additions of entire rooms or floors is not inconsistent with common definitions, trade classifications, the interpretation placed upon the word "floor" by other jurisdictions, or the plain meaning of the word "addition," as McKee argues. We have already determined that under the plain, un-

ambiguous language of K.S.A. 79-3603(p) and applying common sense, an in-ground outdoor swimming pool is not a room or floor as those words are commonly understood.

Three cases relied upon by McKee are distinguishable. *Burdette v. Rollefson Construction Company*, 52 Cal. 2d 720; *Humbert v. Sellars*, 300 Or. 113, 708 P.2d 344 (1985); and *Appleberry v. Berry*, 98 Or. App. 398, 779 P.2d 205 (1989).

In *Burdette*, the Supreme Court of California determined that a private sidewalk leading to an apartment building which was "flat space exposed to the open air, and . . . a platform of the building on which to walk" constituted a floor or deck within the meaning of the Building Code of the City of Los Angeles and required a guardrail to prevent persons from falling from the high horizontal surface. 52 Cal. 2d at 725.

*Humbert* involved determining whether an enclosed patio within a tenant's exclusive control was a floor for purposes of finding a violation under Oregon's Residential Landlord and Tenant Act (RLTA). The Supreme Court of Oregon found that the term "floors" in the RLTA included the floor of the enclosed patio. 300 Or. at 119.

*Appleberry* involved application of Oregon's RLTA to determine whether plastic skimmer covers installed in a concrete walkway next to a swimming pool and covering a swimming pool cleaning device constituted a floor. After finding that the skimmer covers were constructed with the intent that persons walk on them, the Court of Appeals of Oregon determined they were a floor within the meaning of the RLTA. 98 Or. App. at 402.

We conclude, for the purpose of applying K.S.A. 79-3603(p) of the Kansas Retailers' Sales Tax Act, that in-ground outdoor swimming pools, including appurtenances thereto, are land improvements, and the cases relied upon by McKee have no application to the circumstances herein.

McKee relies on a Douglas County building permit form and the State of Kansas Appraisal Manual to support his contention that swimming pools have a trade classification as additions. We note the building permit does not expressly denote a swimming pool as an addition. McKee testified he voluntarily checked the box next to the word addition on the form when he applied for a building permit. Further, the appraisal manual appears to cat-

egorize a swimming pool under the heading "Other Building And Yard Improvements." In brevity, however, we reject McKee's contention for the reason that even if a swimming pool is classified and commonly understood as an "addition" for the purpose of a building permit or real estate appraisal, for the purpose of retailers' sales tax the exemption applies to "the addition of an entire room or floor." The word "addition" cannot be isolated from the phrase "of an entire room or floor."

In light of our conclusion that an in-ground outdoor swimming pool is not a room or floor, but an improvement to land, it follows that BOTA did not err by finding that the 18 pools at issue herein would be exempt from sales tax if the labor service was performed in connection with the original construction of the adjacent building or the completion of an unfinished project. No administrative error occurred as McKee asserts. See K.S.A. 79-3603(p)(1) and (2). As we stated earlier, BOTA properly construed the provisions of K.S.A. 79-3603(p) together to interpret the statute. See *Bell*, 248 Kan. at 151.

We find nothing inequitable in the statute's distinction between the treatment of additions of entire rooms and floors and land improvements immediately surrounding buildings, as McKee suggests. K.S.A. 79-3603(p) has previously been held constitutional in *J.G. Masonry, Inc.*, 235 Kan. at 503, following legislative changes after the statute was found to be unconstitutional in *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 562 P.2d 65, *modified* 221 Kan. 752, 564 P.2d 1280 (1977). Likewise, classifying an in-ground outdoor swimming pool as a land improvement with tax treatment accordingly is neither penal nor discriminatory. 235 Kan. at 503. Simply put, when built as a separate project and not with the initial construction of a building or as a completion of a building, the labor service to construct such a swimming pool is subject to sales tax. We cannot ignore the clear language of K.S.A. 79-3603(p), and the effect of such taxation upon property tax revenue is a matter for legislative consideration.

Finally, we conclude that KDR has not falsely claimed that a written policy regarding the taxability of labor services connected with in-ground swimming pools was in existence during the audit period. Although a letter dated May 23, 1989, written after the

McKee audit, was submitted as evidence of KDR's policy, additional evidence of the policy was submitted before BOTA, which consisted of verbal testimony by Mark Ciardullo, KDR Bureau Chief with the Business Tax Bureau; testimony of Tom Browne, Jr., KDR Division of Taxation, Tax Specialist II; and a Director of Taxation Order dated April 15, 1980.

Ciardullo testified he had been aware of KDR's policy since 1982 that the labor service to construct a swimming pool would be subject to sales tax unless the construction was in connection with the original construction of the building or the completion of any unfinished portion of any existing building. Browne testified that he was aware of KDR's policy since the early 1980's. The April 15, 1980, order construed a new swimming pool to be a land improvement immediately surrounding the building and ruled the services would be exempt from use tax only when done in connection with the original construction of a building.

KDR's administrative interpretation of K.S.A. 79-3603(p) should be given consideration and weight. See *Amoco Production Co. v. Arnold, Director of Taxation*, 213 Kan. 636, Syl. ¶ 5, 518 P.2d 453 (1974); K.S.A. 79-3618. "An agency's interpretation of its own rules and regulations is given deference and will not be disturbed on appeal unless the interpretation is clearly erroneous or inconsistent with the regulation." *In re Tax Appeal of Newton Country Club Co.*, 12 Kan. App. 2d 638, 647, 753 P.2d 304, *rev. denied* 243 Kan. 779 (1988).

K.S.A. 79-3603(p) is clear and unambiguous. We find BOTA has not erroneously interpreted or applied the statute. We conclude the labor services involved in the construction of the 18 in-ground outdoor swimming pools herein were not exempt from sales tax as original construction.

Affirmed.