(967 P.2d 1085)

No. 79,159

DANFORD R. WHEELER, JR., *Claimant/Appellant,* v. THE BOEING COMPANY, *Respondent/Appellee,* and AMERICAN MANUFACTURERS MATUAL INSURANCE COMPANY, *Insurance Carrier/Appellee,* and THE KANSAS WORKERS COMPENSATION FUND.

Opinion filed November 13, 1998.

*Robert R. Lee,* of Wilson, Lee & Gurney, of Wichita, for appellant.

*Frederick L. Haag* and *Stephen M. Kerwick,* of Foulston & Siefkin, L.L.P., of Wichita, for appellees.

Before GERNON, P.J., ROYSE and GREEN, JJ.

GERNON, J.: This is an appeal by Danford R. Wheeler, Jr., of a ruling by the Workers Compensation Board (Board) interpreting K.S.A. 1997 Supp. 44-510e.

We are asked to interpret how K.S.A. 1997 Supp. 44-510e applies in a situation where an employee's permanent partial disability (PPD) benefits change from work disability to functional impairment benefits (or vice versa). This court has jurisdiction to grant relief when the Board "has erroneously interpreted or applied the law." K.S.A. 77-621(c)(4); K.S.A. 1997 Supp. 44-556(a). We have unlimited review of issues of statutory interpretation. *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 368, 899 P.2d 516 (1995).

The statute in effect at the time of Wheeler's injury sets forth the following formula for calculating weekly benefits for permanent partial disability:

"The amount of weekly compensation for permanent partial general disability shall be determined as follows:

(1) Find the payment rate which shall be the lesser of (A) the amount determined by multiplying the average gross weekly wage of the worker prior to such injury by 66⅔% or (B) the maximum provided in K.S.A. 44-510c and amendments thereto;

(2) find the number of disability weeks payable by subtracting from 415 weeks the total number of weeks of temporary total disability compensation was paid, excluding the first 15 weeks of temporary total disability compensation that was paid, and multiplying the remainder by the percentage of permanent partial general disability as determined under this subsection (a); and

(3) multiply the number of disability weeks determined in paragraph (2) of this subsection (a) by the payment rate determined in paragraph (1) of this subsection (a).

"The resulting award shall be paid for the number of disability weeks at the full payment rate until fully paid or modified. . . . In any case of permanent partial disability under this section, the employee shall be paid compensation for not to exceed 415 weeks following the date of such injury, subject to review and modification as provided in K.S.A. 44-528 and amendments thereto." K.S.A. 1997 Supp. 44-510e(a).

Under this formula, an employee entitled to receive PPD benefits gets a full two-thirds of his regular gross weekly wage, up to the statutory maximum, even if he or she continues to work. The length of time the employee receives those weekly benefits, however, is determined by the amount of temporary total disability

(TTD) benefits the employee received and the disability rating attributable to the injury. The higher the disability rating, the longer period the employee receives PPD benefits.

The current benefit formula of K.S.A. 1997 Supp. 44-510e was the result of substantial amendments made to the Workers Compensation Act by the 1993 legislature. L. 1993, ch. 286, § 34. Prior to the 1993 amendments, PPD benefits were calculated differently. All injured employees were entitled to up to 415 weeks of PPD benefits, but the weekly benefit was two-thirds of his or her regular gross weekly wage multiplied by his or her disability rating. Thus, an injured employee received less every week, but for a longer period of time. See K.S.A. 1992 Supp. 44-510e(a).

Wheeler was injured on February 27, 1994, while working for The Boeing Company (Boeing). He was treated medically and was off work, receiving TTD benefits, for 24.5 weeks.

Wheeler was eventually released to return to work, but, by that time, Boeing had eliminated his position. Wheeler pursued a claim against Boeing and eventually received 115.14 weeks of PPD benefits.

Boeing later offered Wheeler a position at a comparable wage. After Wheeler returned to work, Boeing filed an application for review and modification of Wheeler's award, asking that the work disability award be modified and that Wheeler's benefits for his functional impairment rating be limited.

The administrative law judge (ALJ) entered a modified award, finding that after the date Boeing offered Wheeler a position at a comparable wage, Wheeler was only entitled to benefits based upon a 10.5% functional impairment.

The ALJ calculated that Wheeler was entitled to 42.58 weeks of compensation for the functional impairment rating but gave Boeing credit for the 115.14 weeks of work disability compensation previously paid. Accordingly, the ALJ concluded that Wheeler was not entitled to any further compensation.

Wheeler appealed to the Board, which affirmed the ALJ's calculations. The Board found that based upon the 1993 amendments to the benefit formula of 44-510e, "[c]redit must be given for the previous number of weeks paid at the higher disability rate or the

claimant would potentially receive permanent partial disability benefits that exceed the benefits required to be paid by statute." Wheeler appeals.

Wheeler concedes that his entitlement to PPD benefits based on a work disability rating ceased on October 31, 1996, when Boeing returned him to work at a wage comparable to what he was earning prior to his injury. Wheeler argues, however, that the ALJ and the Board erred in interpreting K.S.A. 1997 Supp. 44-510e in determining that he had received all the benefits he was entitled to receive for his 10.5% functional impairment rating.

The interpretation of a statute given by an administrative agency charged with enforcing that statute generally is entitled to great judicial deference. Such interpretation may, in fact, be entitled to controlling significance in judicial proceedings. As a general rule, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. See *City of Wichita v. Public Employee Relations Bd.*, 259 Kan. 628, 630, 913 P.2d 137 (1996).

" 'While the administrative interpretation of a statute should be given consideration and weight, it does not follow that a court will adhere to the administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests within the courts.' " *In re Tax Appeal of McKee*, 19 Kan. App. 2d 43, 48-49, 861 P.2d 1386 (1993) (quoting *In re Tax Appeal of Atchison, Topeka & Santa Fe Ry. Co.*, 17 Kan. App. 2d 794, Syl. ¶ 2, 844 P.2d 756 [1993]).

Here, the Board determined that its methodology was the most reasonable method of calculating modified awards. The Board reasoned that credit must be given for the previous number of weeks paid at the higher disability rate or Wheeler could potentially receive PPD benefits exceeding those required by statute. Under the Board's interpretation, when an employee's compensation changes from work disability to functional disability (or vice versa), he or she would be entitled to a *minimum* of benefits based upon the lowest disability rating. Moreover, the employer will never be liable for more than the maximum benefits based upon the highest disability rating.

Wheeler essentially raises three policy arguments to support his position. First, Wheeler argues that the Workers Compensation Act must be construed in favor of the worker. Second, Wheeler argues that his formula recognizes the distinction between work disability and functional disability awards. Finally, Wheeler argues that using Boeing's formula reduces an employee's incentive to return to work following a work disability.

Kansas law no longer states a general principle that the Workers Compensation Act be construed in favor of the worker. In 1987, the Kansas legislature added what is now subsection (g) to K.S.A. 44-501. L. 1987, ch. 187, § 1. That subsection states:

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. *The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder.*" (Emphasis added.) K.S.A. 1997 Supp. 44-501(g).

In his second policy argument, Wheeler contends that his methodology in calculating modified benefits is more appropriate because it recognizes the distinctions between work disability and functional disability. The appellate courts have repeatedly recognized the distinction between work disability and functional impairment. See, *e.g.*, *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414-17, 799 P.2d 1011 (1990); *Watkins v. Food Barn Stores, Inc.*, 23 Kan. App. 2d 837, 838-39, 936 P.2d 294 (1997) (dispute as to whether claimant's loss of employment entitled him to work disability); *Griffin v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d 139, 147-48, 927 P.2d 958 (1996), *rev. denied* 261 Kan. 1082 (1997) (common law retaliatory discharge case).

Although functional impairment and work disability are calculated differently and are designed to compensate for different types of losses, the compensation is still based upon damages caused by *one* work-related injury. An employee is entitled to only one recovery for his work-related injury. The Board's methodology recognizes the one-injury concept by giving the employer credit for the PPD benefits previously paid, whether those benefits were for work disability or functional disability. The amount of benefit does

not change when an employee's work disability status changes; the only change under the current statute is the length of time the employee is entitled to receive benefits. Nothing in the 1993 amendments reflects the legislative intent to treat functional impairment and work disability as two separate and independent benefits to which the employee is entitled.

Finally, Wheeler contends that the Board's methodology is incorrect because it does not serve the purposes of K.S.A. 1997 Supp. 44-510e—to create incentives to return injured employees to work. Wheeler contends that employees will be discouraged from returning to work at comparable wages if they know their benefits will be terminated. Wheeler also argues that with his methodology, employers would still be encouraged to bring injured workers back, even if they have to pay some functional impairment benefits, because the employer will still be paying benefits for a shorter time.

Clearly, the purpose of limiting work disability benefits to those injured workers who cannot earn comparable wages was designed, in part, to encourage employers to return injured employees to work, even at accommodated positions. The carrot to the employer is to reduce the employee's benefits from a work disability rating to a generally lower functional impairment rating. See *Griffin v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d at 147-48. This incentive is even greater if the Board's methodology is used, thereby entitling the employer to full credit for permanent partial work disability benefits previously paid.

The better public policy, we conclude, is that if the employer can establish the employee is capable of earning comparable wages, the employee's right to work disability benefits ends, even if the employee fails to accept such alternative employment. See *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). The risk of losing work disability benefits, regardless of whether the employee actually returns to work, is incentive enough for the employee to accept work when it becomes available.

We conclude that Wheeler's arguments must be rejected and approve the Board's methodology, finding that it is reasonable and consistent with the Workers Compensation Act.

Affirmed.